## J. C. WOOTTERS V. W. T. HALE.

### No. 3227.

1. **Party to Suit May Testify.**—*After his father's death a son was sued for land given him by his father by parol contract, followed by possession and valuable improvements. Held, that on the trial the defendant was a competent witness to prove the transaction. He did not claim the land as heir or legal representative of his father.*

2. **Same—Exceptions to the Statute.**—*The general rule that no person shall be incompetent to testify by reason of interest, etc., will be applied save in the exceptional cases named in article 2248, Revised Statutes. The exceptions will not be extended.*

3. **Parol Sale of Land—Fact Case.**—*See facts held sufficient to support a verdict finding as a fact a parol sale of land, valid against a subsequent deed by the grantor.*

4. **Charge.**—*A charge ignoring a material issue made by the testimony is properly refused. See example.*

APPEAL from Houston. Tried below before Hon. JAMES I. PERKINS. The opinion states the case.

*Nunn & Nunn,* for appellant.—1. The court erred in admitting in evidence the testimony of defendant W. T. Hale as to declarations by and transactions with his deceased father Robert Hale, as against plaintiff and over plaintiff's objections. Simpson v. Brotherton, 62 Texas, 170; Alexander v. Lewis, 47 Texas, 491, 492; Hubbard v. Cox, 76 Texas, 243; Glover v. Thomas, 75 Texas, 507; Parks v. Caudle, 58 Texas, 221; McCampbell v. Henderson, 50 Texas, 613.

2. While it may be considered that a parol gift of land by father to son may be valid, yet, in the language of our Supreme Court, "The party setting up such promise must be able to establish it by full, clear, and satisfactory evidence. Its terms and conditions must be clear and free from all ambiguity and doubt. It must also appear that possession has been taken and improvements made upon the faith of it. Permissive occupation by the father and mere expectation of a gift by the son will not bring the case within the rule." Murphy v. Stell, 43 Texas, 135; Wootters v. Hall, 67 Texas, 514; Ann Berta Lodge v. Leverton, 42 Texas, 19; Ward v. Stewart, 62 Texas, 335; Eason v. Eason, 61 Texas, 226.

No brief for appellee reached the Reporter.

GARRETT, PRESIDING JUDGE, *Section B.*—Action of trespass to try title, brought by appellant, J. C. Wootters, against the appellee, W. T. Hale. This is the second appeal; the first will be found reported in 67 Texas, 514. Wootters claims the land by virtue of a conveyance

from Robert Hale, the father of the defendant; and the latter claims it by virtue of a parol gift from his father, accompanied by occupation and improvements.

There was a jury trial, which resulted in a verdict and judgment for the defendant, from which the plaintiff has appealed.

Upon the trial the defendant was permitted to testify, over the objection of the plaintiff, that his father Robert Hale by verbal declaration gave defendant the land in controversy, the objection being that it was not competent for the defendant to give such testimony as against the plaintiff, who claims by deed from Robert Hale, deceased; for the statute allowing a witness to testify in his own behalf makes an exception which excludes his testimony in this case.

The defendant does not claim the land as the "heir" or "legal representative" of his father, and the exceptions mentioned in the statute will not be extended by implication to a class of persons not named, although the reason for embracing them was equally as strong as those which existed for including the persons expressly designated. Newton v. Newton, 77 Texas, 510. In the case of Chamberlin v. Boon, 74 Texas, 660, the controversy was between Boon, who claimed under Clark, and a vendee of the heirs of Clark, who had died, and the court held that there was no error committed in permitting Boon to testify as to a transaction between himself and Clark. There will be no extension of the exceptions; they are confined to parties to the suit and to those named in the statute, party meaning a party to the issue, and not to the record only. It was not improper to admit the evidence.

Appellant's second assignment of error is, that "The court erred in submitting to the jury an issue as to the alleged gift of Robert Hale to W. T. Hale in 1881, because there was no sufficient evidence to support a finding in favor of the defendant on such question."

In 1874 the heirs of Kerchoffer brought an action against Robert Hale, W. T. Hale, and one J. H. Burnett to recover the land in controversy. The two latter disclaimed, and in 1879 a judgment was rendered in favor of Robert Hale for the land, and in favor of W. T. Hale and Burnett for costs on their disclaimer. Plaintiff claims the lands by a deed from Robert Hale to him dated March 8, 1882, and also by a deed from Kerchoffer's heirs to him dated October 5, 1882. This action was brought September 17, 1886; and on the first trial of the case the defendant W. T. Hale testified, that his father gave the land to him and his brother John Hale; and that they went upon it in 1867, and commenced to improve the same; and testified at some length about occupation and improvements; and that in 1870 or 1871 he had bought his brother out. He said nothing about a gift having been made in 1881, after the judgment in the suit by the Kerchoffer heirs. On the first appeal the Supreme Court held, that having taken a judgment on his disclaimer, W. T. Hale was estopped from setting up title against

one claiming through the heirs of Kerchoffer, unless he could show title acquired since the judgment in that suit. 67 Texas, 514.

On the last trial the defendant testified to a gift from his father to him of the land since the judgment in the suit of Kerchoffer's Heirs v. Hale, and the court submitted this issue to the jury. Appellant contends that the evidence was not sufficient to support the finding thereon in favor of the defendant, and it should not have been submitted.

The defendant testified, in substance, that he claimed the land in controversy as a gift from his father Robert Hale. In 1867 Robert Hale gave the land to him and his brother John, and he bought John's interest in 1870 or 1871, for which he paid him $600, and lived on the land from 1867 to 1878. He moved off the land in 1878 on account of the suit filed for it by the Kerchoffer heirs, which was then pending; that he was uneasy about the title to the land, as it was in litigation, and did not want to improve it further. He moved to a small place near by, but continued to cultivate the land, and got all there was made on the place, and did not pay any rent. No one ever demanded any rent from him from the time he first moved off the place in 1878. In August or September, 1881, which was after the termination of the Kerchoffer heirs' suit, his father told him that because of the work he had done on the land and the $600 he had paid his brother, he thought defendant ought to have it; that he wanted him to have it, and if he would move back on the place he would give it to him, and went with him in company with L. H. Beard to select a building site thereon. Defendant consented, and they went to the place, and his father pointed out a good site and asked defendant to build there.

He immediately began to improve and made arrangements to build, and in addition to improvements made during his prior occupation, he cleared and improved about twenty acres of land in the fall of 1881 at a cost of $10 per acre, and built a log house, side room, and gallery, worth about $200, and moved back on the place in December, 1881. He built a smoke house in 1881 or 1882, worth $15. In 1883 he erected a log house worth $200, and in 1884 or 1885 he planted an orchard worth $25; in 1884 he made a garden worth $20, two corn cribs worth $20 or $25 each, but not worth so much at time of trial. In 1883 he built a smoke house worth $15, but not so much now, and a tenant house worth $100 in July or August, 1886. He put up a house worth $200. (Plaintiff's deed is shown to have been recorded March 9, 1882, but it does not appear that the defendant knew of its execution.) He testified, that he had lived on the land and claimed it since 1881. He moved on it and cleared up land and built houses on it, because his father gave him the land and promised to make him a deed to it. There were no improvements on the land when he went there in 1867. He had sold the small place that he went to in 1878, and had no home except the

one in controversy. He filed the disclaimer in the suit brought by the Kerchoffer heirs, because his father told him he would defend the suit.

On cross-examination, he said the first gift was made by his father in 1867. On the former trial all his testimony was as to the gift of 1867; and he said nothing then as to the gift of 1881. When asked if he had not claimed the land since 1867, he said, "I can not say that I have claimed the land since 1867, because I abandoned it in 1878." But he continued to cultivate it and get the rents and profits after moving off of it in 1878; that he has received the rents off the place since 1867, and never paid any rent for the use of it, and no one demanded possession of him; that he felt safer in going off the place while in litigation; that he has paid the taxes on the land since 1881; and rendered it in 1879 as the Conner land. He left the place during the pendency of the Ker-. choffer suit, and went back on it after his father gave it to him in 1881. He did not think he would have gone on the place had the gift not been made him again in 1881.

The testimony of W. T. Hale on the former trial of the case in 1886 was read over to him, and he said it was pretty correct. His attention was called to the fact that he then said nothing about a gift in 1881, and he said nothing was said about a gift in 1881. On that trial he stated, that he claimed the land as a gift from his father to his brother and himself in 1867, and he purchased his brother's interest. He had lived on the land and continuously claimed it, and had no knowledge of an adverse claim when he went on last. He gave a detailed account of improvements made, specifying the years when made and the value of the same, but did not mention any improvements made in 1881 except that he had seventy-five acres in cultivation that year, and had previously had sixty; that at the time of the trial he had eighty acres in cultivation. The rental value of the land was $3 per acre per annum for the cleared land. Defendant said: "I had a conversation with J. C. Wootters a short while after the termination of the suit between the heirs of J. H. Kerchoffer v. Robert Hale et al., and he asked me to pay $80 as his part of the compromise, which I refused to do, and I told him I had nothing to do with the compromise."

L. H. Beard testified, that in 1881 he lived on W. T. Hale's place. Robert Hale told Bill Hale he would give him the place if he would move on and live on the place, and said that he thought he had the best right to the land, because of the labor he had expended on it and the $600 he had paid his brother. This was in the summer of 1881; and W. T. Hale began immediately to improve the place and employed witness to get out some boards. Hale moved on the place in December, 1881; the land cleared was about twenty acres of timbered land, and it was worth $10 per acre to put it in cultivation. The house built was a log house worth $250. There were about forty acres of land in cultivation before this.

On cross-examination, he said the gift was made on a hill where they selected a place to build. Robert Hale and W. T. Hale went from the house to a place on a hill about three-fourths of a mile to select a building site. When asked how he came to be present, he said that defendant asked him to go, and he went to be walking around. He supposed they went on the hill to select a building site. All that he remembered to have been said on the occasion was, that Robert Hale said to W. T. Hale, "If you will build on this ridge I will give you the land," and that he had selected that place, and it was the prettiest building place on the land, and asked him if that was not so, and he said yes. He said, also, that he thought he could get good water there.

Defendant's answer in the case, filed in 1886, was read in evidence, alleging the gift to himself and brother in 1867 by Robert Hale, and that this defendant from the year 1867 had had continuous and adverse possession of said premises in good faith up to this time, setting out his improvements, but not showing any made in 1881.

Upon the above state of facts the court charged the jury, in effect, that if they believed from the evidence that about the month of September, 1881, Robert Hale made a gift to his son W. T. Hale of the land here claimed by him, and that his son accepted said gift, and on the faith of same took possession and moved his family on same, and relying on the gift so made to him made permanent and valuable improvements, then you will find for the defendant, W. T. Hale.

A parol gift of land will be sustained and enforced when clearly proved, and when possession has been taken and valuable improvements made on the faith of it. Murphy v. Stell, 43 Texas, 133; Willis v. Matthews, 46 Texas, 482; Wooldridge v. Hancock, 70 Texas, 21.

If the testimony of the defendant and the witness Beard was true— and the jury have determined that in favor of the defendant—a gift of the land in 1881 by Robert Hale to the defendant was clearly established. There can be no doubt about the terms of the gift; they were, that if the defendant would return to the land and live upon it his father would give it to him. Whatever may be thought about the defendant's failure on the former trial to mention in the testimony then given by him the gift which he claims was made to him in the year 1881, it only went to his credibility; and on the last trial he testified clearly and positively to his moving off the land in 1878 on account of the suit then pending for it, and that afterward, in 1881, his father told him he ought to have the land, and that if he would move back upon it he would give it to him, and promised to make him a deed for it; that he did move back upon the land and cleared about twenty acres more of it and made other valuable improvements. He gave a reasonable explanation of his leaving the land in 1878, and of his disclaimer in the suit brought by the Kerchoffer heirs; and his testimony as to the gift, possession, and improvements was corroborated by the witness

Beard. There is no doubt or obscurity about the nature and terms of the gift and the occupation and improvement of the land left by the testimony when its credibility is once established by the verdict of the jury. We think that the evidence authorized the charge, and that it is sufficient to support the verdict.

The charge of the court instructing the jury as to the abandonment by the defendant under the alleged gift of 1867, or as to his not continuing to claim thereunder, has been assigned as error, because there was no sufficient evidence of abandonment in fact, or that the defendant did not continue to claim the land, to warrant a finding against the plaintiff on this point, and because the evidence failed to disclose the existence of the necessary concurrent facts, such as the change of possession, and the making of permanent valuable improvements, to warrant the jury in finding against plaintiff on this ground. Defendant testified, that he moved off the place in 1878 on account of the pendency of the suit; he was uneasy about the title, as it was in litigation, and did not want to improve the land further. While he cultivated the land and received the rents therefor, he did not move back upon or improve it further until after the determination of the Kerchoffer suit in his father's favor, and his father had again given it to him. The charge was authorized by the evidence, and the evidence was sufficient to sustain the finding of the jury that there was a gift in 1881:

There was no error in refusing the special instructions requested by the plaintiff, because the two first were sufficiently incorporated in the charge of the court, which was full and fairly submitted the issues in the case; and the last instruction asked, to the effect that "the judgment read in evidence in the suit of the Heirs of J. H. Kerchoffer v. Robert Hale, W. T. Hale, and J. H. Burnett, rendered in 1879, had the effect to vest the title in Robert Hale, and no gift of same to defendant W. T. Hale by his father at any former date would be valid as against such judgment, and the conveyance to plaintiff by Robert Hale in 1882 would have the effect to pass the title to plaintiff." This instruction was properly refused, because it ignored the issue as to the gift in 1881, and incorrectly stated the effect of the Kerchoffer judgment, because the estoppel against the defendant arose out of the fact that plaintiff claimed under a deed from the Kerchoffer heirs, and the defendant had disclaimed title in their suit for the land.

The remaining assignments of error question the sufficiency of the evidence to sustain the verdict of the jury. We have reviewed the evidence under the second assignment of error, and here will only say that we think it is sufficient to support the verdict.

The judgment of the court below should be affirmed.

*Affirmed.*