## H. L. Newcomb et al. v. Thomas B. Cox et al.

### Decided January 13, 1902.

**1.—Statute of Frauds—Parol Sale of Land.**

Where a parol contract as to land is not a present sale or transfer of the land, but an agreement that the title should vest in the vendee upon the death of the vendor in consideration of personal services to be rendered by the vendee, it is within the statute of frauds and can not be enforced.

**2.—Same—Executed Parol Sale—Possession—Improvements.**

Evidence that plaintiff went to live on the land with the owner, her sister, and rendered her valuable services upon a promise that the land should be hers at the owner's death, and that plaintiff expended $8 in having a well cleaned out and a fence repaired, does not show an executed parol contract for the sale of land such as can be enforced by the courts.

**3.—Same—Evidence—Variance—Gift.**

Proof of a parol gift of land will not sustain an allegation of a parol sale.

**4.—Limitations—Possession of Cotenants—Heirs.**

Possession of land by a cotenant is presumed to be a possession under the common title, and mere possession of and payment of taxes on lands of a decedent by her sister, who claims the property by gift from or parol contract of sale with decedent, is not adverse possession against the other heirs where they have no notice of such adverse claim.

Appeal from Houston. Tried below before Hon. John Young Gooch.

*H. W. Moore,* for appellants.

*Aldrich & Lipscomb,* for appellees.

PLEASANTS, Associate Justice.—This is an action of trespass to try title brought by appellants against the appellees, Thomas B. Cox, German Smith, and Jo Jim. The property involved in the suit is an

undivided one-third of lot No. 21 in the town of Crockett, in Houston County.

The appellees above named pleaded not guilty, and also the three, five, and ten years statutes of limitation, and further answered that they were the tenants of J. E. Downes and asked that he be made a party. Downes answered adopting the pleas of his tenants and codefendants, and pleading further, averred that he had purchased the premises in question from Mrs. Mary Mortimer and had received from her a warranty deed to same; that the said Mary Mortimer was a sister of Mrs. P. Offrey, deceased, through whom plaintiffs claim as heirs at law, and that on or about the 10th day of July, 1888, the said Mrs. Offrey for a valuable consideration transferred and sold said premises to Mrs. Mortimer. This answer then contains allegations of fact which are set out for the purpose of showing a parol sale of the premises by Mrs. Offrey to Mrs. Mortimer, the substance of said allegations being, that on the date above mentioned Mrs. Offrey, who was a widow about 80 years of age and in feeble health, and had no one to nurse and care for her, proposed to Mrs. Mortimer, who was then teaching a school in the town of Crockett and earning thereby about $25 per month, that if she would give up said school and live with her that she, Mrs. Mortimer, should have a homestead interest in said premises during their joint lives, each having the same full and free use and enjoyment of same, and that upon her, Mrs. Offrey's, death the title in fee to said premises should vest solely and exclusively in Mrs. Mortimer; that it was contemplated in said proposition that Mrs. Mortimer would nurse Mrs. Offrey in sickness and assist her in all of the duties of housekeeping, both parties being poor and unable to employ servants or assistance of any kind; that Mrs. Mortimer accepted said proposition, gave up her school and went to live with Mrs. Offrey, and until the death of the latter, which occurred in July, 1889, continued to forego her school, which was worth as aforesaid the sum of $300 per year, and lived with and rendered services to Mrs. Offrey of the reasonable value of $300; that during the time Mrs. Mortimer so lived with Mrs. Offrey she held possession of said premises in common with Mrs. Offrey, and since the death of the latter, Mrs. Mortimer and those holding and claiming under her have held and claimed said premises in fee absolutely and exclusive of the claims of all other persons and have paid all taxes thereon and kept the same insured; that after taking joint possession of said premises with Mrs. Offrey as aforesaid the said Mrs. Mortimer, with the knowledge and consent of Mrs. Offrey, made permanent and valuable improvements thereon prior to Mrs. Offrey's death, and has also made valuable improvements on same since her death, which latter improvements were contemplated and approved by Mrs. Offrey in her lifetime.

Mrs. Mortimer intervened in the suit and adopted as her answer the answer of the defendant Downes.

The cause was tried by a jury in the court below and resulted in a

verdict and judgment in favor of defendant Downes for the title and possession of the premises before described and against appellants for all costs of suit, from which judgment this appeal is prosecuted.

The material facts proven upon the trial of the case are as follows: Mrs. P. Offrey is the common source of title. She died intestate on July 5, 1889, leaving as her sole heirs two sisters and a brother, F. A Newcomb, who is now dead. The appellants are· the heirs of said F. A. Newcomb. After the death of Mrs. Offrey's husband, which occurred in. August, 1888, her sister, Mrs. Mary Mortimer, who was then teaching school and living in the town of Crockett, abandoned her school and went to live with Mrs. Offrey and during the remainder of the latter's life continued to live with her and assisted her in keeping house, nursed her during her sickness, and performed services for her of the reasonable value of $300. The school abandoned by Mrs. Mortimer when she went to live with her sister was worth $300 a year. After her husband's death Mrs. Offrey expressed the desire to have her sister come and live with her, stating that she was tired of seeing her (Mrs. Mortimer) go around from pillar to post without a home and wanted her to have a home, and if she would quit her school and come and live with her she should have a home with her, Mrs. Offrey, during the latter's life, and at her, Mrs. Offrey's, death all of her property, including the premises in controversy, should belong to Mrs. Mortimer. During Mrs. Offrey's life she and Mrs. Mortimer occupied the premises jointly, and Mrs. Mortimer's right to exercise equal dominion and control of the premises with that exercised by Mrs. Offrey was expressly recognized by the latter. Mrs. Mortimer testified that she had no contract with Mrs. Offrey when she quit her school and went to live with her, but that she gave up her school voluntarily and went to live with her sister and wait on her if she needed it, and that after she went to live with her Mrs. Offrey told her that she should have all of her property, including the premises in question, after her death. Prior to Mrs. Offrey's death Mrs. Mortimer had a well on the place cleaned out at a cost of $5 and the fencing repaired at a cost of $3. These were the only improvements made on the place by Mrs. Mortimer before her sister's death. After Mrs. Offrey's death a new room was added to the house and a stable and crib built on the lot by Mrs. Mortimer. The room is shown to have been worth $100, but the value of the other improvements is not shown.

The appellant Frank Allbright is a minor and all the other appellants reside in Louisiana. None of them ever had any notice of the fact that Mrs. Mortimer was claiming all of the property. The record discloses no act of Mrs. Mortimer's showing a denial of the interest of her cotenants in the premises of which they should be required to take notice prior to the conveyance by her to the appellee Downes in 1898.

It is well settled that an executed parol contract for the sale of land, the purchase money having been paid and the possession taken, and valuable improvements placed thereon by the vendee, will constitute a

good title to the land in the vendee, but we are of opinion that neither the pleading nor the evidence in this case shows that the parol contract of sale relied on by the appellees is one that can be enforced in a court of equity. The contract alleged is not a present sale or transfer of the land, but an agreement that the title to the property should vest in the vendee upon the death of the vendor in consideration of personal services to be performed by the vendee. Such contract is within the statute of frauds and can not be enforced. Sprague v. Haines, 68 Texas, 216. If we concede, however, that the contract alleged was sufficient, if fully executed, to vest title in Mrs. Mortimer, the evidence wholly fails to establish such contract. Mrs. Mortimer, the alleged vendee, expressly denies the execution of the contract as alleged, and testifies that she voluntarily quit her school and went to live with her sister without having any contract with her, and that Mrs. Offrey gave her the property or promised her that it should be hers when she, Mrs. Offrey, died.

It is unnecessary to cite authority upon the proposition that proof of a parol gift of land will not sustain an allegation of a parol sale, but admitting for the sake of argument that the pleadings in this case are sufficient to entitle the appellees to have proven a parol gift of the land followed by such possession and the making of such improvements by the donee as would perfect the title in her, the evidence is insufficient to establish such title. The testimony of Mrs. Mortimer shows that Mrs. Offrey did not make a present gift of the premises to her, but only promised that she should have the place after her death. No valuable improvements were placed on the property by Mrs. Mortimer prior to the death of Mrs. Offrey (the cleaning out of the well and the repair of the fencing at a total cost of $8 can not be said to constitute valuable improvements), and it is perfectly clear that had Mrs. Offrey in her lifetime repudiated her alleged gift Mrs. Mortimer could not have enforced same as against her. Such being the case, no title to the premises had vested in Mrs. Mortimer prior to the death of Mrs. Offrey, and to hold that the erection of improvements after the death of Mrs. Offrey in reliance upon the promise of Mrs. Offrey that she, Mrs. Mortimer, should have the place at her death, will perfect the title to said premises in Mrs. Mortimer would be to abrogate our statute of wills. While it is clear that Mrs. Offrey intended that her sister should have the property after her death she failed to do what was necessary to make her intention effective, and under the facts of this case this court is powerless to effectuate such intention.

The evidence also fails to show title in appellees by limitation. The possession of a cotenant will be presumed to be a possession under the common title, and the tenant in possession can not claim to have held adversely to his cotenant unless it clearly appears that he had repudiated their title. In such case mere possession and payment of taxes do not constitute adverse possession as against the cotenant, but to render the possession adverse, notice of such adverse holding must be given the cotenants by the tenant in possession or must be shown by such acts of

unequivocal character and notoriety that the cotenant will be presumed to have notice of the repudiation and denial of his title. Phillipson v. Flynn, 83 Texas, 580. As before stated no notice was given appellants that Mrs. Mortimer was claiming the entire premises, and the only act of hers from which a repudiation of the title of her cotenants should be presumed shown in the evidence was the sale to Downes, which occurred less than five years before this suit was brought.

The undisputed evidence shows that appellants as heirs at law of Mrs. Offrey are the owners of an undivided one-third interest in the premises sued for. The judgment of the court below will be reversed and judgment here rendered in appellants' favor of said undivided interest, and it is so ordered.

*Reversed and rendered.*